**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEVIN WALKER MURDEN,** | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:09-0135 |
| v. | : | (CONABOY, D.J.) |
| | | (MANNION, M.J.) |
| **DOMINICK DeROSE,** | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION[1]

Pending before the court is the remaining defendant's motion for summary judgment. (Doc. No. 44). Based upon a review of the motion and related materials, it is recommended that the motion be granted.

By way of relevant background, the plaintiff, a former inmate at the Dauphin County Prison, filed the instant civil rights action pursuant to 42 U.S.C. §1983 on January 21, 2009. (Doc. No. 1). By report dated February 25, 2010, it was recommended that a motion to dismiss the plaintiff's original complaint be granted in part and denied in part. (Doc. No. 22). By memorandum and order dated April 29, 2010, the report of the undersigned was adopted and the plaintiff was directed to file an amended complaint addressing only his placement in segregation, his claims for excessive force alleging that he was subject to brutal assaults and that he was pepper

---

[1]For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

sprayed without provocation, his claim for denial of access to the courts, and his free exercise claims, including a claim newly raised in the plaintiff's objections to the report of the undersigned that he was denied running water necessary to purify himself prior to prayer. In amending his complaint, the plaintiff was directed to set forth the specific actions taken by each of the defendants in order to establish their personal involvement in each of the claims raised by the plaintiff. (Id.).

On May 28, 2010, the plaintiff filed his amended complaint. (Doc. No. 31). On June 14, 2010, a motion to dismiss the plaintiff's amended complaint was filed. (Doc. No. 32). By report dated February 3, 2011, it was recommended that the defendants' motion be granted in part and that the plaintiff be permitted to proceed only on his claim of a violation of his First Amendment rights by defendant DeRose, which had not been addressed by the defendants in their motion to dismiss the amended complaint. (Doc. No. 37). By order dated February 28, 2011, the report was adopted and the matter was remanded for consideration of the final remaining claim. (Doc. No. 38).

On March 14, 2011, an answer was filed to the amended complaint. (Doc. No. 41).

On June 30, 2011, defendant DeRose filed the pending motion for summary judgment, (Doc. No. 44), along with a supporting brief, (Doc. No. 47), statement of material facts, (Doc. No. 48), and supporting exhibits, (Doc.

No. 49). On August 22, 2011, the plaintiff filed a brief in opposition to the defendant's motion for summary judgment. (Doc. No. 50). A reply brief was filed by defendant DeRose on September 1, 2011. (Doc. No. 51).

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Supreme Court has stated that:

> ". . . [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. Id. The moving party can discharge that burden by "showing . . . that there is an absence of evidence

3

to support the nonmoving party's case." Id. at 325.

Issues of fact are genuine "only if a reasonably jury, considering the evidence presented, could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988) (citations omitted). Material facts are those which will effect the outcome of the trial under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court may not weigh the evidence nor make credibility determinations. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. Id. at 393.

If the moving party meets his initial burden, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. Id.

The only remaining claim by the plaintiff is a First Amendment claim alleging improper confiscation of the plaintiff's religious materials against defendant DeRose. To this extent, the plaintiff alleges that on June 16, 2008, a corrections officer came to his cell and confiscated the plaintiff's Qur'an, kufi, and another religious book, and threw them in the garbage. When asked why he did so, the plaintiff alleges that the officer responded that he was "just following the orders of the Warden (DeRose) and the rest of his superiors."

In response to the plaintiff's allegations, defendant DeRose has

provided a statement of material facts[2] supported by the record which indicates that the plaintiff was admitted to the Dauphin County Prison on August 28, 2007, after having been convicted on charges of criminal homicide, four counts of aggravated assault, recklessly endangering another person, person not to possess, use, etc. a firearm, carrying a firearm without a license, criminal attempt – criminal homicide, possession with intent to manufacture and/or deliver a controlled substance, drug paraphernalia, and a state probation/parole detainer.

On May 29, 2008, the plaintiff was housed on the C-Block in the Dauphin County Prison. This same day, there was an altercation on the upper tier of C-Block which resulted in a call for "all guards" as an inmate was assaulted by other inmates. As a result of this incident, C-Block was placed on lockdown status. Lockdown status was maintained because of the disruptive behavior of the inmates, discovery of contraband including weapons, and to maintain the security of the prison.

During the lockdown, the plaintiff was permitted to retain bedding, uniform, hygiene products, legal materials, written correspondence materials, one religious book, two books for counseling, underclothing, socks and thermal underwear. The plaintiff was permitted at all times a religious book

---

[2]Contrary to L.R. 56.1, the plaintiff has failed to file a responsive statement of facts with appropriate record citations. As such, the defendant's facts are deemed admitted for purposes of the instant report.

and visits with a religious advisor when he was on lockdown status.

On June 16, 2008, while the plaintiff was still housed on C-Block, the inmates on C-Block caused a riot, which included assaulting staff and destruction of County property. During this incident, inmates rigged the cell block doors so that the doors could not lock and close. As a result of this incident, the plaintiff was charged with, among other things, possession of contraband in the form of a shank and a sock filled with batteries. The plaintiff's offense was investigation by the Criminal Investigation Division of Dauphin County and criminal charges were filed against the plaintiff, including prohibited possession of offensive weapons, on November 12, 2008. Another inmate was charged with aggravated assault of a correctional officer. In order to maintain security and for the safety of both inmates and staff, C-Block was reclassified as "segregation issue" status as a result of the severity of the incident.

The plaintiff remained on "segregation issue" status no later than July 16, 2008. Moreover, the plaintiff did not remain on "segregation issue" status for the entire period of June 16, 2008, to July 16, 2008. To this extent, there were occasions when the prison attempted to remove the inmates on C-Block from "segregation issue" status during this period, but as a result of the disruptive behavior of the inmates housed on the block, the prison maintained their restrictive housing status.

On July 5, 2008, the plaintiff, while still on "segregation issue" status, had in his possession an Ebony magazine, a Koran, and a towel which were not permitted due to his continued behavior and, therefore, he was disciplined for having possession of this contraband.

On July 16, 2008, the plaintiff, while on lock-in status on C-Block, had in his possession a blue pen, uniform bottom, and contraband sheet, which were not permissible items and therefore contraband. The plaintiff was also found to have been instigating other inmates to be disruptive. As a result, the plaintiff was issued disciplinary reports and reclassified that day to the Restrictive Housing Unit, ("RHU"). While in the RHU, the plaintiff was permitted to possess a religious book and was potentially permitted to visit with a religious advisor with prior approval from the Deputy Warden.

The plaintiff was reclassified from the RHU and moved to lock-in status on September 8, 2008.

In an attempt to controvert the facts set forth by defendant DeRose, the plaintiff has submitted a brief in opposition to the motion for summary judgment. Upon review, the court finds that the plaintiff's response is insufficient to establish that a material issue of fact exists for trial with respect to the plaintiff's First Amendment claim. Specifically, the plaintiff has done nothing more than to reallege and expand upon the allegations set forth in his amended complaint without providing any evidentiary support for his claims.

On the undisputed facts of record, defendant DeRose argues that he is entitled to summary judgment on the plaintiff's claim of violation of First Amendment rights. (Doc. No. 47, pp. 4-10).

It is well established that "convicted prisoners do not forfeit all constitutional protections in prison." Bell v. Wolfish, 441 U.S. 520, 545 (1979). Although incarcerated, inmates retain protections afforded by the First Amendment. Pell v. Procunier, 417 U.S. 817, 822 (1974). The Supreme Court has stated, however, that "incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 285 (1948). The First Amendment rights of inmates, therefore, may be limited when they pose a "likelihood of disruption to prison order or stability." Wilson v. Schillinger, 761 F.2d 921, 925 (3d Cir. 1985) (citation omitted), *cert. denied*, 475 U.S. 1096 (1986).

The Supreme Court has held that prison regulations "alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987). A regulation is upheld if it is "reasonably related to legitimate penological interests." Id. Factors considered relevant in evaluating the "reasonableness" include: (1) the connection between the regulation and a legitimate

government purpose; (2) the existence of alternative means of exercising the right; (3) the impact accommodation of the right would have on guards, other inmates, and prison resources; and (4) the absence of ready alternatives to the regulation. Turner v. Safley, 482 U.S. 78, 89 (1987).

Here, the defendant's materials establish that the plaintiff's religious materials were only taken when the inmates were placed on "segregation issue" status, which was only for a period of approximately one month, from June 16, 2008, to July 16, 2008. This placement was due to the severity of the incident which occurred on June 16, 2008, wherein inmates on C-Block caused a riot, which included assaulting staff and destruction of County property. Among other things, the inmates rigged the cell block doors so that they would not lock or close. This placement on "segregation issue" status was to maintain security and for the safety of both inmates and staff. Even during this time, however, the defendant's materials reflect that attempts were made to lift the restrictions of the "segregation issue" status, however, because of the disruptive behavior of the inmates on the block, it was necessary to maintain the status until July 16, 2008.

In considering the defendant's materials, the restrictions, which had no religious foundation, but were based upon the security of the institution and the safety of the inmates and staff, were certainly reasonably related to a legitimate penological interest. The defendant's materials reflect that the

9

restrictions were only placed for that period of time which was necessary in order to restore the block to its original status and was not of such a significant period of time as to violate the plaintiff's First Amendment rights.

Moreover, during this time, under the second factor of O'Lone, although the plaintiff did not have his formal religious materials, there is no indication that he was denied the right to pray in his cell as an alternative means of exercising his religious beliefs.

Pursuant to the Third O'Lone factor, it was certainly reasonable for prison officials to believe, in light of the inmates' behavior at this period of time, that attempting to return to normal operations would have jeopardized the security of the inmates and staff.

Finally, the burden of suggesting an alternative which "'fully accommodates the prisoner's rights at *de minimus* cost to valid penological interests' falls on the plaintiff inmate." Hobbs v. Pennell, 754 F.Supp. 1040, 1049-50 (D.Del. 1991) (citing Turner, 482 U.S. at 91). Here, the plaintiff has not suggested a feasible alternative to the temporary restrictions placed upon him and the other inmates which would have adequately addressed the security concerns of prison officials.

Considering all of the above, the plaintiff has failed to establish a violation of his First Amendment rights and the defendant is entitled to summary judgment with respect to this claim.

On the basis of the foregoing, **IT IS RECOMMENDED THAT:**

the defendant's motion for summary judgment, **(Doc. No. 44)**, be **GRANTED**.

                                                                   s/ *Malachy E. Mannion*
                                                                   **MALACHY E. MANNION**
                                                                   **United States Magistrate Judge**

**Date:**  January 27, 2012

O:\shared\REPORTS\2009 Reports\09-0135-03.wpd