UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEVIN WALKER MURDEN,               :
                                     :CIVIL ACTION NO. 3:09-CV-135
      Plaintiff,              :
                                       :(JUDGE CONABOY)
      v.                      :(Magistrate Judge Mannion)
                                       :
DOMINICK DeROSE,                   :
                                       :
      Defendant.              :

---

**MEMORANDUM**

Here we consider the Report and Recommendation issued by Magistrate Judge Malachy E. Mannion on January 27, 2012, in which he recommends that Defendant DeRose's Motion for Summary Judgment (Doc. 44) in the above-captioned action be granted. (Doc. 52.) With the present motion Defendant DeRose, the only remaining Defendant in this action, seeks judgment in his favor on Plaintiff's Amended Complaint (Doc. 31). (Doc. 44.)

Plaintiff filed a Motion to Vacate Judgment on February 10, 2012. (Doc. 53.) He indicates the Motion is filed pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, and he requests the Court to vacate "the judgment of this Court entered on January 27, 2012." (Doc. 53 at 1.) This filing shows Plaintiff misapprehends the effect of Magistrate Judge Mannion's January 27, 2012, Report and Recommendation, although he received notice of the methodology for objecting to the Report and Recommendation (Doc. 52-1). Because Plaintiff's Motion and Memorandum of Law (Docs. 53-1, 53-2) presents issues and argument which can be construed as

objections to the Report and Recommendation, we will review Plaintiff's filings as such.

For the reasons discussed below, we conclude Plaintiff's objections are without merit.  We adopt the Report and Recommendation (Doc. 52) and grant Defendant DeRose's Motion for Summary Judgment (Doc. 44).

## I. Background

The Magistrate Judge set out the following background information in his Report and Recommendation.[1]

> By way of relevant background, the plaintiff, a former inmate at the Dauphin County Prison, filed the instant civil rights action pursuant to 42 U.S.C. § 1983 on January 21, 2009. (Doc. 1.)  By report dated February 25, 2010, it was recommended that a motion to dismiss the plaintiff's original complaint be granted in part and denied in part. (Doc. No. 22). By memorandum and order dated April 29, 2010, the report of the undersigned was adopted and the plaintiff was directed to file an amended complaint addressing only his placement in segregation, his claims for excessive force alleging that he was subject to brutal assaults and that he was pepper sprayed without provocation, his claim for denial of access to the courts, and his free exercise claims, including a claim newly raised in the plaintiff's objections to the report of the undersigned that he was denied running water necessary to purify

---

[1] Plaintiff did not file a response to Defendant's Statement of Material Facts (Doc. 48).  Therefore, Magistrate Judge Mannion properly deemed the facts asserted by Defendant unopposed pursuant to Local Rule 56.1 of the Local Rules of Court of the Middle District of Pennsylvania.  (Doc. 52 at 5 n.2.)  Furthermore, Plaintiff does not dispute any fact asserted in the Magistrate Judge's factual recitation.  (*See* Docs. 53, 53-1, 53-2.)

himself prior to prayer. In amending his complaint, the plaintiff was directed to set forth the specific actions taken by each of the defendants in order to establish their personal involvement in each of the claims raised by the plaintiff. (*Id.*)

On May 28, 2010, the plaintiff filed his amended complaint. (Doc. 31.)  On June 14, 2010, a motion to dismiss the plaintiff's amended complaint was filed. (Doc. 32.) By report dated February 3, 2011, it was recommended that the defendants' motion be granted in part and that the plaintiff be permitted to proceed only on his claim of a violation of his First Amendment rights by defendant DeRose, which had not been addressed by the defendants in their motion to dismiss the amended complaint. (Doc. 37.) By order dated February 28, 2011, the report was adopted and the matter was remanded for consideration of the final remaining claim. (Doc. 38.)

On March 14, 2011, an answer was filed to the amended complaint. (Doc. 41.)

On June 30, 2011, defendant DeRose filed the pending motion for summary judgment (Doc. 44) along with a supporting brief (Doc. 47), statement of material facts (Doc. 48), and supporting exhibits (Doc. 49).  On August 22, 2011, the plaintiff filed a brief in opposition to the defendant's motion for summary judgment. (Doc. 50.) A reply brief was filed by defendant DeRose on September 1, 2011. (Doc. 51.)

. . . .

The only remaining claim by the plaintiff is a First Amendment claim alleging improper confiscation of the plaintiff's religious materials against defendant DeRose. To this extent, the plaintiff alleges that on June 16, 2008, a corrections officer came to his cell and confiscated the plaintiff's Qur'an, kufi, and another religious book, and

3

threw them in the garbage. When asked why he did so, the plaintiff alleges that the officer responded that he was "just following the orders of the Warden (DeRose) and the rest of his superiors."

In response to the plaintiff's allegations, defendant DeRose has provided a statement of material facts supported by the record which indicates that the plaintiff was admitted to the Dauphin County Prison on August 28, 2007, after having been convicted on charges of criminal homicide, four counts of aggravated assault, recklessly endangering another person, person not to possess, use, etc. a firearm, carrying a firearm without a license, criminal attempt – criminal homicide, possession with intent to manufacture and/or deliver a controlled substance, drug paraphernalia, and a state probation/parole detainer.

On May 29, 2008, the plaintiff was housed on the C-Block in the Dauphin County Prison. This same day, there was an altercation on the upper tier of C-Block which resulted in a call for "all guards" as an inmate was assaulted by other inmates. As a result of this incident, C-Block was placed on lockdown status. Lockdown status was maintained because of the disruptive behavior of the inmates, discovery of contraband including weapons, and to maintain the security of the prison.

During the lockdown, the plaintiff was permitted to retain bedding, uniform, hygiene products, legal materials, written correspondence materials, one religious book, two books for counseling, underclothing, socks and thermal underwear. The plaintiff was permitted at all times a religious book and visits with a religious advisor when he was on lockdown status.

On June 16, 2008, while the plaintiff was still housed on C-Block, the inmates on C-Block caused a riot, which included

4

assaulting staff and destruction of County property. During this incident, inmates rigged the cell block doors so that the doors could not lock and close. As a result of this incident, the plaintiff was charged with, among other things, possession of contraband in the form of a shank and a sock filled with batteries. The plaintiff's offense was investigation [sic] by the Criminal Investigation Division of Dauphin County and criminal charges were filed against the plaintiff, including prohibited possession of offensive weapons, on November 12, 2008. Another inmate was charged with aggravated assault of a correctional officer. In order to maintain security and for the safety of both inmates and staff, C-Block was reclassified as "segregation issue" status as a result of the severity of the incident.

The plaintiff remained on "segregation issue" status no later than July 16, 2008. Moreover, the plaintiff did not remain on "segregation issue" status for the entire period of June 16, 2008, to July 16, 2008. To this extent, there were occasions when the prison attempted to remove the inmates on C-Block from "segregation issue" status during this period, but as a result of the disruptive behavior of the inmates housed on the block, the prison maintained their restrictive housing status.

On July 5, 2008, the plaintiff, while still on "segregation issue" status, had in his possession an Ebony magazine, a Koran, and a towel which were not permitted due to his continued behavior and, therefore, he was disciplined for having possession of this contraband.

On July 16, 2008, the plaintiff, while on lock-in status on C-Block, had in his possession a blue pen, uniform bottom, and contraband sheet, which were not permissible items and therefore contraband. The plaintiff was also found to have been instigating other inmates to be disruptive. As a result, the

5

> plaintiff was issued disciplinary reports and reclassified that day to the Restrictive Housing Unit, ("RHU"). While in the RHU, the plaintiff was permitted to possess a religious book and was potentially permitted to visit with a religious advisor with prior approval from the Deputy Warden.
>
> The plaintiff was reclassified from the RHU and moved to lock-in status on September 8, 2008.

(Doc. 52 at 1-7.)

As noted above, Plaintiff filed a Motion to Vacate Judgment (Doc. 53) on February 12, 2012. We construe this Motion as a filing pursuant to Local Rule 72.3 of the Local Rules of Court of the Middle District of Pennsylvania expressing objection to the Report and Recommendation. Therefore, we will address issues raised therein as if they were presented as objections to the Report and Recommendation.

## **II. Discussion**

### *A. STANDARD OF REVIEW*

When a magistrate judge makes a finding or ruling on a motion or issue, his determination should become that of the court unless objections are filed. *See Thomas v. Arn*, 474 U.S. 140, 150-53 (1985). Moreover, when no objections are filed, the district court is required only to review the record for "clear error" prior to accepting a magistrate judge's recommendation. *See Cruz v. Chater*, 990 F. Supp. 375, 378 (M.D. Pa. 1998). However, when objections are filed to a magistrate judge's Report and Recommendation, the

6

district judge makes a *de novo* review of those portions of the report or specified proposed findings or recommendations to which objection is made. *See Cippolone v. Liggett Group, Inc.*, 822 F.2d 335, 340 (3d Cir. 1987), *cert. denied*, 484 U.S. 976 (1987).

### B.     *Summary Judgment Standard*

Summary judgment is appropriate when the movant demonstrates there is no "genuine issue as to any material fact." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248). In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (citation omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477

7

U.S. 317, 330 (1986) (citations omitted).  The moving party may meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case. when the nonmoving party bears the ultimate burden of proof." *Id.* at 325.  The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56 to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  *Id.* at 324.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence."  *Anderson*, 477 U.S. at 255.  Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

### *C.   Plaintiff's Objections*

Though difficult to follow, we read Plaintiff's filings to object generally to the Magistrate Judge's conclusion that Defendant did not violate Plaintiff's constitutional right to the free exercise of religion.  (Docs. 53-1, 53-2.)  Plaintiff argues his constitutional rights were violated from May 29, 2008, to July 16, 2008. (Doc. 53-1 at 2.)  The alleged violation is specifically based on the confiscation of Plaintiff's Koran with Plaintiff

8

arguing "[t]here's no proof by defendants that confiscating Koran would maintain security, Plaintiff was not charged ore [sic] accused of using religious Koran as a weapon.  Therefore no confiscation of legal Koran was needed." (*Id.*)

Plaintiff also asserts he was a pretrial detainee during the relevant time and "pretrial detainees [sic] rights are protected more than convicted prisoners." (Doc. 53-1 at 2.)  He does not say how the asserted principle would play out in the circumstances here.  We read this assertion to be an objection that the Magistrate Judge did not analyze his First Amendment claim as that of a pretrial detainee rather than a convicted prisoner.

It is well recognized that convicted prisoners confined in prison do not forfeit all constitutional protections.  *Bell v. Wolfish*, 441 U.S. 520, 545 (1979).  Retention of certain constitutional rights by prison inmates does not preclude restriction and limitation of those rights.  *Id.* at 545-46. "[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners *and pretrial detainees*." *Bell v. Wolfish*, 441 U.S. 520, 546 (1979) (emphasis added).  Prison officials are entitled to wide-ranging deference in implementing these recognized essential penological interests.  *Id.* at 547.

> [T]he problems that arise in the day-to-day operation of a corrections facility are

9

>                not susceptible of easy solutions.  Prison
>                administrators therefore should be accorded
>                wide-ranging deference in the adoption and
>                execution of policies and practices that in
>                their judgment are needed to preserve
>                internal order and discipline and to maintain
>                institutional security.

*Id.*

Here the actions taken by prison officials were in response to a riot on the block where Plaintiff was housed, and Plaintiff himself was charged with possession of contraband in the form of a shank and a sock filled with batteries. (Doc. 52 at 6.) Given these circumstances and the principle related to pretrial detainees explained in *Bell*, we conclude Plaintiff's status as a pretrial detainee does not affect our analysis of the First Amendment issue remaining in this case.

Under the First Amendment, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. The First Amendment is applicable to the states via the Fourteenth Amendment. *DeHart v. Horn*, 227 F.3d 47, 50 (3d Cir. 2000). As set out above, the United States Supreme Court has held that neither convicted prisoners nor pretrial detainees forfeit all constitutional protections because of their confinement. *Bell*, 441 U.S. at 545. The free exercise of religion is protected in the prison setting. *DeHart*, 227 F.3d at 50. However, "a prisoner's right to practice his religion is not absolute and . . . prison officials may restrict the exercise of an

10

inmate's constitutional rights when necessary to facilitate some legitimate goals and policies of penal institutions." *Dreibelbis v. Marks*, 675 F.2d 579, 580 (3d Cir. 1982) (internal quotation omitted) (citing *Bell*, 441 U.S. at 545-46); *see also O'Malley v. Brierly*, 447 F.2d 785, 795 (3d Cir. 1973).

Alleged deprivations of constitutional rights which take place in the context of prison disturbances create special considerations. *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986). "When the 'ever-present potential for violent confrontation and conflagration,' *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132, 97 S. Ct. 2532, 2541, 53 L. Ed. 2d 629 (1977), ripens into *actual* unrest and conflict, the admonition that 'a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators,' *Rhodes v. Chapman*, 452 U.S. [337,] 349 n.14 . . . [(1981)], carries special weight." *Whitley*, 475 U.S. at 321-22. Courts have also determined that a temporary deprivation of a religious item does not rise to the level of a constitutional violation. *See*, *e.g.*, *Marsh v. Corrections Corp. of America*, 134 F.3d 383, 383 (10th Cir. 1998) (Table Decision) (concluding plaintiff's allegations that defendants temporarily deprived her of religious items for fifteen days failed to satisfy her burden of establishing First Amendment violation); *see also McCroy v. Douglas County Corrections Center*, No. 8:10CV69, 2010 WL 1610945, at *3 (D. Neb. 1996 Apr. 20, 2010 )

11

(prisoner did not state a claim for relief where his religious items were confiscated during a shakedown and then returned 15 days later after prisoner filed a grievance form).

We conclude the circumstances of the case and extent of the deprivation support the Magistrate Judge's conclusion that summary judgment in favor of Defendant is proper.  Although Plaintiff states his rights were violated from May 29, 2008, to July 16, 2008 (Doc. 53-1 at 2), he does not identify how his rights were violated before reclassification of his unit to "segregation issue" status on June 16, 2008--Plaintiff was allowed to retain his religious materials while his unit was on lockdown status from May 29, 2008, to June 16, 2008 (Doc. 52 at 5-6).  Therefore, we are concerned only with the period from June 16, 2008, to July 16, 2008.

Importantly, the deprivation at issue was the result of a general clearing of cell contents in response to a riot which took place on Plaintiff's unit on June 16, 2008.  (Doc. 52 at 9.)  The duration of the intermittent "segregation issue" status was due to continued unrest in the unit for a period of at least thirty days thereafter.  (*Id.*)  Plaintiff testified that following the June 16, 2008, incident, prison officials "came around and took everybody's belongings . . . everything we had in [our cells]."  (Murden Dep. 10:15-18, May 27, 2011, Doc. 49-9.)  Based on this testimony, Plaintiff does not dispute that the imposed restrictions were a response to the disturbance and were not targeted at religious

12

materials.

Plaintiff has presented no basis upon which we would disagree with the Magistrate Judge's conclusion that prison officials' penological interest in maintaining security and order following a major disturbance on June 16, 2008, and continued unrest for a period thereafter would justify clearing inmate's cells of all possessions. (*See* Doc. 52 at 9-10.)  The need to clear cells (and keep them clear) is highlighted by the fact that, despite having been on lockdown status (where possessions allowed in the cell are limited) since May 29, 2008, following the riot on June 16, 2008, Plaintiff was in possession of contraband in the form of a shank and a sock filled with batteries.  (Doc. 51 at 5.)

Further, although the material not permitted in Plaintiff's cell for the thirty-day period while the unit was on "segregation issue" status included Plaintiff's copy of the Koran, Plaintiff actually had a copy of the Koran until July 5, 2008.  Thus, Plaintiff was without a copy of the Koran for a period of approximately sixteen (16) days.  During this time Plaintiff's ability to exercise his religion was not otherwise infringed.  We agree with courts which have found that deprivations of similar duration do not rise to the level of a constitutional violation. *Marsh*, 134 F.3d at 383; *McCroy*, 2010 WL 1610945, at *3.

Considered in the relevant legal framework, Plaintiff is incorrect that Defendant's admission that his Koran was confiscated

13

shows that his First Amendment rights were violated.  (*See* Doc. 53-1 at 2.)  Particularly in light of the special deference due prison actions taken in response to prison disturbances, we concur with Magistrate Judge Mannion that Defendant DeRose is entitled to summary judgment on the remaining Plaintiff's First Amendment claim.

Finally, we note that Plaintiff's reference to his inability to contact other witnesses and obtain affidavits from witnesses in other prisons does not alter our determination.  (*See* Doc. 53-2 at 1.)  Plaintiff does not dispute the facts upon which the Magistrate Judge and the Court base our conclusions.  He does not show how affidavits from other prisoners would support his position.

### III. Conclusion

For the reasons discussed above, we conclude Defendant DeRose's Motion for Summary Judgment (Doc. 44) is properly granted.  Therefore, we adopt Magistrate Judge Mannion's Report and Recommendation (Doc. 52), grant Defendant DeRose's Motion for Summary Judgment (Doc. 44), and close this case.[2]  An appropriate Order will be entered.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: February 15, 2012

---

[2] With this determination, Plaintiff's Motion to Vacate Judgment (Doc. 53) is termed.

14